STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID W. RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:        David_Rizk@fd.org


Counsel for Defendant Sanchez-Rodriguez


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 19–00657 WHO |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE** |
| v. | |
| JEYSON SANCHEZ-RODRIGUEZ, | **Court:**        Courtroom 4, 19th  Floor |
| Defendant. | **Hearing Date:**   March 12, 2019 |
| | **Hearing Time:**   1:30 p.m. |

### I.        INTRODUCTION

Jeyson Sanchez-Rodriguez will be before the Court on March 12, 2020 to be sentenced for

attempting to complete a hand-to-hand drug sale on November 14, 2020.  After he was booked by

S.F.P.D. and released by the Superior Court, he was arrested by federal agents on December 6, 2020,

on the steps of the Superior Court where he was appearing for his state court date (as ordered).  He is

just 20 years old, he has never been to the United States previously, and he has never been arrested

previously.  His Guidelines are six to twelve months.  As of sentencing, he will have served three

months.  Mr. Sanchez-Rodriguez thanks the Court for permitting an expedited sentencing proceeding

without a Presentence Report (PSR), and respectfully asks that he be sentenced to time served and

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*SANCHEZ-RODRIGUEZ*, CR 19–00657 WHO

1

2

three years of supervised release.

## II.     SENTENCING GUIDELINES

Mr. Sanchez-Rodriguez stipulates to the Guidelines calculation set forth in the parties' plea

agreement, which is as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2D1.1(c)(14): | 12 |
| Acceptance of responsibility, U.S.S.G. § 3E1.1: | -2 |
| **Total Offense Level** | **10** |

Mr. Sanchez-Rodriguez has no prior contacts with law enforcement and thus falls into Criminal

History Category I.  The Guidelines sentence for a Total Offense Level of 10 and Criminal History

Category I is 6-12 months, falling in Zone B.

## III.     FACTUAL BACKGROUND[1]

In 1999, Mr. Sanchez-Rodriguez was born to Maria del Carmen and Olmer Alcides in the small

town of Orica, Honduras.  The region is rural and dominated by agriculture, specifically tomatoes and

chile production.  Mr. Sanchez-Rodriguez's mother is a homemaker now, and his father works in

construction, masonry, and agriculture.  Mr. Sanchez-Rodriguez also has two younger biological

siblings, a brother and sister, as well as a paternal half-sister, who is roughly his age.  He reports he

enjoys strong family ties and had frequent contact with his mother and siblings prior to his arrest in

January.

Shortly after his birth, Mr. Sanchez-Rodriguez's parents separated and his mother went to work

in Tegucigalpa, some four hours away by bus.  Mr. Sanchez-Rodriguez was left to live with his

grandparents.  He relates that he lived with his grandparents at their modest home with his siblings

for approximately the first eight and a half years of his life.  Asked whether he was happy as a child,

he said no, he had a difficult childhood.  Although he was happy that he was able to live with his

grandparents as a child, his family was extremely poor.  He also missed his mother and father as a

child.  Mr. Sanchez-Rodriguez's grandparents lived hand to mouth, growing food for the family on a

small plot of land.  At approximately age 9, happily, his parents reunited and the family moved into a

---

[1] The defense provides the following background information about Mr. Sanchez-Rodriguez in lieu
of a PSR.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

small house near his grandparents.  At age 15, because the family needed his support, Mr. Sanchez-Rodriguez was forced to leave school (after about six years of studies) in order to work.  He worked on his family's vegetables as well as on other larger landowners' fields.  Looking back, he regrets that he was unable to remain in school because he sees how his lack of education has drastically diminished his options: "For people who have had their studies it is easy for them to get ahead, but for someone like me, who couldn't finish their studies, you just have to work and keep looking for work," he said.

All of his friends and family in Honduras dream for an opportunity to come to the United States to make money, he reports.  Mr. Sanchez-Rodriguez's chance came from an uncle who was in the United States working and who offered to help him make the trip.  Mr. Sanchez-Rodriguez had never traveled far outside of his hometown and he had no idea what to expect of the United States.  He was anxious and afraid for his safety the entire trip.  He traveled by car, train, raft, and foot through Honduras, Guatemala, and Mexico.  The trip took nearly two months, including nearly a week of walking through the desert near the U.S.-Mexico border.

Although he came to the United States for work, when Mr. Sanchez-Rodriguez arrived in Oakland this past October, day laborer work was difficult to find.  Mr. Sanchez-Rodriguez's uncle had offered him work in roofing, but the opportunity did not materialize.  Although he found a room to share with a relative, he could not afford his share of the rent.  As a result, when a friend told him he could make some money by selling small amounts of drugs, he felt he had no other option.  Mr. Sanchez-Rodriguez was originally arrested on November 14, 2019, booked, and released.  He was arrested by the federal government on his way to a state court hearing.

## IV.    LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker,* 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a).  The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence.  Importantly, the Court may not presume the Guidelines range is reasonable.  *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam).  Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

sentence disparities among similarly situated defendants.  18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).

In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes

set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A)

to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the

public from further crimes of the defendant; and (D) to provide the defendant with needed

educational and vocational training, medical care, or other correctional treatment in the most effective

manner. 18 U.S.C. § 3553(a)(2).

## V.      ARGUMENT

Several matters warrant the Court's consideration in connection with Mr. Sanchez-Rodriguez's

request for a time served sentence:

*First*, the charged offense and Mr. Sanchez-Rodriguez's circumstances counsel in favor of a

time served sentence of three months.  This case should never have been prosecuted federally.  The

offense was a quintessential street-level drug sale that did not involve violence, resistance, weapons,

possession of large quantities of controlled substances, or other aggravating factors.  Mr. Sanchez-

Rodriguez has never been previously arrested or convicted of a crime.  He would have benefitted

significantly from vocational training and counseling, rather than custody.  Mr. Sanchez-Rodriguez

should have been permitted to participate in diversion at the Superior Court.[2]  Had he done so, he

would likely have received assistance with job training, and no time in custody—a far more

appropriate and productive disposition for the Court and the community.  Instead, federal

prosecutions such as this one inappropriately single out impoverished immigrants in our community

where the gravity of the crime simply does not warrant the use of federal resources, let alone a multi-

month sentence.

Although the government makes an effort in its sentencing brief to justify its misguided

campaign of low-level drug prosecutions by citing statistics concerning substance abuse and deaths in

---

[2] Although the government doubts whether Mr. Sanchez-Rodriguez would benefit from diversion and
appears to believe that diversion programs are only available to those suffering from addiction, that is
of course not the case at the S.F. Superior Court.

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*SANCHEZ-RODRIGUEZ*, CR 19–00657 WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the area, there is no evidence that prosecuting the lowest level offenders will have any impact on public health and safety.  In fact, as the government's own sentencing materials show, such prosecutions typically target minority populations disproportionately.  According to a 2019 S.F. Board of Supervisors Budget Memo: "The majority (51 percent) of individuals booked or cited for drug sales in FY 2017-18 were Hispanic even though Latinos only make up 15 percent of the City's population. Black arrestees were also overrepresented in drug sale arrests compared to the share of the City population (27 percent of arrestees vs. five percent of the population)." *See, e.g.* ECF No. 17-7 at 1.  In large part because such prosecutions are discriminatory and ineffective, the U.S. Attorney's Office's decision to prosecute people like Mr. Sanchez-Rodriguez is directly at odds with current best practices in law enforcement as well as our community's values.  Again, according to the government's own sentencing materials: "Federal, State, and local policies have shifted away from criminal prosecution and mandatory sentencing of low-level drug offenders in recent years. The City has established diversion and collaborative justice programs to help address addiction and other social service needs related to illegal drug sales." *See id.* at 2.  Of course, the Northern District of California has established similar programs such as ATIP because they provide superior results as compared to conventional prosecutions.  It is very unfortunate, to say the least, that the U.S. Attorney's Office is unable to recognize the value of these alterative programs and has undertaken to deny them to low-level offenders such as Mr. Sanchez-Rodriguez.  Given this context, additional custodial time is certainly not necessary to mete out sufficient punishment, consistent with the mandate of § 3553(a).

*Second*, the public will be protected from any further crimes by Mr. Sanchez-Rodriguez by the requested time served sentence because, following his sentence, Mr. Sanchez-Rodriguez will almost certainly be deported to Honduras and remain there.  Unlike many otherwise similarly situated defendants before the Court, Mr. Sanchez-Rodriguez has no history of returning to this country.  He understands that if he makes the mistake of doing so he may face a new federal charge for illegal reentry as well as a supervised release violation—and ultimately, in all likelihood, a longer sentence.  The immigration consequences do not end there, however.  The Court may also take into consideration the fact that, because of the nature of the conviction, almost every avenue for relief that

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*SANCHEZ-RODRIGUEZ*, CR 19–00657 WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Sanchez-Rodriguez would otherwise be able to pursue in immigration proceedings is now unavailable.  In effect, Mr. Sanchez-Rodriguez has received a lifetime ban from entering the United States.  The recommended time served sentence is thus more than adequate to protect the public.

*Third,* deterrence does not justify a longer sentence.  As an initial matter, the available data does not support the conclusion that longer sentences promote general deterrence.[3]  Given the particular the circumstances of this case, the concept of specific deterrence does not make much sense either.  More fundamentally, Mr. Sanchez-Rodriguez, like many immigrants, faces far worse conditions in Honduras.  The dangers and hardships at home drove him to take the extraordinary steps of leaving his family, and embarking on the dangerous journey to the United States at such a young age, and ultimately to commit the instant crime.  Mr. Sanchez-Rodriguez took these steps in order to survive.  The deterrent value of a marginally longer sentence, weighed against the desperation felt by immigrants such as Mr. Sanchez-Rodriguez, is doubtful at best.  In any case, Mr. Sanchez-Rodriguez has never served any time in custody previously, so the ordeal of his current incarceration (and likely deportation thereafter) is more than sufficient to deter him from selling drugs on the street again.

*Fourth*, and finally, Mr. Sanchez-Rodriguez's personal history counsels in favor of a downward variance.  Although this Court frequently sees defendants from disadvantaged backgrounds, Mr. Sanchez-Rodriguez has certainly had to contend with great challenges stemming from his family's poverty.  As Mr. Sanchez-Rodriguez himself acknowledges, had he been available the opportunity to obtain a full education and regular employment at home, he would not be here and would not have been driven to commit the instate crime.  Thus, while the instant offense is reprehensible, it is also understandable why such a young man would make such mistakes out of desperation.  Mr. Sanchez-Rodriguez's personal circumstances do not favor imposition of a longer sentence.

## VI.    CONCLUSION

For all the reasons set forth above, Mr. Sanchez-Rodriguez respectfully asks that the Court

---

[3] *See, e.g.,* Kelli D. Tomlinson, *An Examination of Deterrence Theory: Where Do We Stand?* FEDERAL PROBATION 80 (3), 33-38 (Dec. 2016) ("Severity of punishment was once thought to deliver the main deterrent effect; the more severe the consequence for law-breaking, the less likely an individual is to commit a crime. However, this assumption has not been supported in the literature.").

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*SANCHEZ-RODRIGUEZ*, CR 19–00657 WHO

1

sentence him to time served followed by three years supervised release.

2

3

4

    Dated:    March 5, 2020                    Respectfully submitted,

5

                                        STEVEN G. KALAR

6

                                        Federal Public Defender
                                        Northern District of California

7

                                              /S

8

                                        DAVID W. RIZK
                                        Assistant Federal Public Defender

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*SANCHEZ-RODRIGUEZ*, CR 19–00657 WHO